■ Oscar Gruss & Son Inc. et al., Appellants, v Steven A. Rosendorf, Respondent.—Judgment, Supreme Court, New York County (David B. Saxe, J.), entered December 21, 1990, which denied and dismissed the petition for an order staying arbitration proceedings between these parties before the National Association of Securities Dealers, affirmed, without costs.

We agree with the trial court's analysis and interpretation of the two contracts entered into by the parties as they relate to respondent's rights to choose a forum for arbitration. We find that, while the transactions at issue are governed generally by the agreement specifically related to the trade of options ("Options Agreement"), the language of that agreement is far too ambiguous to permit the interpretation that, in entering into it, respondent was foregoing his right under the previously executed Cash Account Agreement to elect the forum in which to arbitrate any dispute "concerning any transaction or the construction, performance or breach of this or any other agreement between us whether entered into prior, on, or subsequent to the date hereof." The Options Agreement specifically states that "it will in no event be deemed to abrogate or in any way diminish any of your rights" under the Cash Account Agreement except that "in the event of any conflict between the terms of this Agreement *[sic]*, the provisions of this Agreement shall prevail." This narrowly stated exception should not be used to abrogate respondent's rights under the Cash Account Agreement unless there is an unambiguous and irreconcilable conflict between the agreements. This is particularly so since petitioner drafted both agreements, and ambiguities should therefore be resolved in respondent's favor *(see, Rentways, Inc. v O'Neill Milk &*

*Cream Co.,* 308 NY 342; *Diodato v Eastchester Dev. Corp.,* 111 AD2d 303).

Viewed in this context, we agree with the trial court's finding that the arbitration clause of the Options Agreement, which states merely that arbitration is to be governed by the rules of the New York Stock Exchange and does not clearly state that that organization must conduct the arbitration, fails to provide an unambiguous conflict with the Cash Account Agreement's provision that respondent is entitled to choose the forum for arbitration. Moreover, the Options Agreement itself assumes that respondent maintained his right of election, since it authorizes petitioner, if respondent fails to "make such election * * * to make such election on my behalf." Under these circumstances, the petition to stay the arbitration under the auspices of the organization selected by respondent was properly denied. Concur—Ellerin, J. P., Wallach, Ross and Asch, JJ.

Smith, J., dissents in a memorandum as follows: The decision of the motion court should be reversed. The issue presented on appeal is whether the Cash Account Agreement or the Options Agreement which contain repugnant provisions concerning the choice of an arbitrator is controlling.

In 1988, respondent Steven A. Rosendorf ("Rosendorf") was a client of petitioner Oscar Gruss & Son Inc. ("OGSI"), a registered brokerage firm and member of the New York Stock Exchange ("NYSE"). Petitioner Jonah Meer is a vice-president of OGSI. Rosendorf's account with OGSI was handled by Peter Jeffer, who allegedly made numerous misrepresentations to Rosendorf concerning, *inter alia,* his expertise in options trading, his information sources and the identity of his other clientele.[1] These misrepresentations were allegedly made to induce Rosendorf to do business with Jeffer. After approximately 400 transactions, which were funded from respondent's $450,000 cash account, $439,000 was lost, although $59,000 in commissions was earned.

As a result, in 1989 Rosendorf commenced an arbitration proceeding before the National Association of Securities Dealers ("NASD"), Fort Lauderdale, Florida Division, pursuant to an arbitration clause in his August 8, 1988 Cash Account Agreement with OGSI. The pertinent section reads as follows: "Any arbitration under this agreement shall be determined

---

1. Respondent contends that Jeffer pleaded guilty to insider trading between 1984 and 1988 and is awaiting sentencing before the U.S. District Court for the Southern District of New York (Miriam Cedarbaum, J.).

pursuant to the arbitration laws of the State of New York, before the American Arbitration Association, or before the New York Stock Exchange, Inc., or arbitration facility provided by any other exchange or the National Association of Securities Dealers, Inc., and in accordance with its rules then obtaining. The undersigned [Rosendorf] may elect in the first instance whether arbitration shall be by the American Arbitration Association, or by the New York Stock Exchange, Inc., or other exchange or market facility, but if undersigned fails to make such election, by registered letter or telegram addressed to you [Gruss] at your main office, before the expiration of five days after receipt of a written request from you to make such election, then you may make such election." In his arbitration demand, respondent set forth nine claims asserting, *inter alia,* various violations of Federal securities laws, breach of fiduciary duty, fraud, and negligence.

By way of an Order to Show Cause dated September 5, 1990, petitioners sought an order "permanently enjoining and restraining respondents [Rosendorf and NASD] from proceeding with the NASD Arbitration." Petitioners contend that the securities transactions complained of in Rosendorf's demand for arbitration concerned options and, as such, their August 10, 1988 Options Agreement, which provided for arbitration solely before the NYSE, was controlling. The pertinent provisions of the Options Agreement state:

"Any controversy arising out of the handling of any of the transactions referred to in this Agreement shall be settled by arbitration in accordance with the applicable rules of the New York Stock Exchange, Inc. I [Rosendorf] authorize, you [Gruss] if I do not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, to make such election on my behalf * * *

"Where applicable, this Agreement is supplementary to the Customer's Agreement simultaneously or heretofore entered into between us and shall in no event be deemed to abrogate or in any way diminish any of your rights under said agreement; *provided, however, that in the event of any conflict between the terms of this Agreement [sic], the provisions of this Agreement shall prevail".*[2] (Emphasis supplied.)

The IAS court found that the arbitration clause in the Cash

---

2. Petitioners assert, without any substantive opposition, that the Cash Account Agreement is the standard customers' agreement signed by all OGSI customers.

Account Agreement pertained to all transactions, contained no inconsistencies and was not ambiguous.

However, the Options Agreement was found to be inconsistent and ambiguous. As such, it was construed against its drafter, OGSI. Accordingly, the IAS court vacated the temporary restraining order and dismissed the petition.

It is well settled that "[w]here two documents are to be construed [to determine liability]—one specifically prepared for the transaction in question and the other a general form— the former takes precedence as to all provisions which are repugnant in the two documents" *(Teal v Place,* 85 AD2d 788, 789 [1981]; *Trade Bank & Trust Co. v Goldberg,* 38 AD2d 405, 406 [1972]; *see also, Poel v Brunswick-Balke-Collender Co.,* 216 NY 310, 322 [1915]).

The arbitration provisions in the Options Agreement are controlling because respondent's claims overwhelmingly pertain to options transactions. Respondent's expert's affidavit, based upon the review of 268 transactions in Rosendorf's OGSI account, concluded that all of that activity occurred in a cash account and that of those 268 transactions, "at least" 14 did not pertain to options. These revelations are of no moment to respondent's case. Respondent fails in any substantive way to counter petitioners' assertions that all of the transactions, options or otherwise, occurred in the cash account and that of the total of approximately 406 transactions in that account, 387 (95%) involved either the purchase, sale or exercise of a call option, whereas only 19 (5%) involved the purchase and/ or sale of stocks. Moreover, petitioners' contentions appear to be supported by the account statements contained in the record. Respondent does not challenge this hard data.

Accordingly, since the controlling agreement between these parties provides that disputes concerning option transactions are to be arbitrated before the NYSE, the petition seeking a stay of arbitration proceedings before NASD should be granted.